### PASSAIC VALLEY SEWERAGE COM'RS v. TIERNEY.

(Circuit Court of Appeals, Third Circuit. September 18, 1924.)

#### No. 2936.

1. **Municipal corporations** ⟐⟐356 — Sewerage commissioners held to have impliedly warranted adequacy of methods prescribed by plans and specifications.

Under contract for construction of sewerage works according to plans and specifications prepared by sewerage commissioners' engineer, commissioners *held* to have impliedly warranted that methods prescribed by plans and specifications for supporting pipes and for making joints between pipes water-tight were adequate if work was properly done by contractor.

2. **Contracts** ⟐⟐302—Contractor not responsible for consequences of defects in plans and specifications prepared by owner.

A contractor is not responsible for consequences of defects in plans and specifications prepared by owner.

3. **Appeal and error** ⟐⟐1052(5)—Admission of evidence harmless, when verdict not based thereon.

In sewer contractor's action for breach of contract, any error in admitting evidence as bearing on question of deceit was harmless, where verdict included anticipated profits, which jury were told could not be included in verdict based on deceit.

4. **Customs and usages** ⟐⟐21 — Existence of custom as to computing linear feet of pipe under sewer construction contract held for jury.

In sewer contractor's action for breach of contract, existence of custom pursuant to which vertical and horizontal branches should be included in computing number of linear feet of pipe *held* question for jury.

5. **Municipal corporations** ⟐⟐358(1) — Sewer construction contract held not to provide for method of measurement.

Provision of sewer construction contract authorizing sewer commissioners' engineer to determine "amount * * * of the several kinds of work and materials which are to be paid for hereunder," authorized him to make measurements, but not to determine what was to be measured.

6. **Municipal corporations** ⟐⟐362(1) — Delay due to inadequacy of methods specified held not ground for rescission.

Sewer commissioners could not order discontinuance of work by contractor on notice from engineer that work was being unreasonably or unnecessarily delayed, where delay was due to inadequacy of methods specified by plans and specifications, which commissioners had impliedly warranted to be adequate.

7. **Municipal corporations** ⟐⟐362(1)—Contract held not to empower engineer to decide whether adequacy of methods prescribed impliedly warranted.

Sewer construction contract, authorizing commissioners to notify contractor to discontinue work on notice from engineer that work was being unreasonably or unnecessarily delayed, did not empower engineer to decide whether commissioners had impliedly warranted adequacy of methods prescribed by plans and specifications prepared by commissioners' engineer.

In Error to the District Court of the United States for the District of New Jersey; Joseph L. Bodine, Judge.

Suit by John C. Tierney against the Passaic Valley Sewerage Commissioners. Judgment for plaintiff, and defendant brings error. Affirmed.

Riker & Riker, of Newark, N. J. (Adrian Riker, John R. Hardin, and Shelton Pitney, all of Newark, N. J., of counsel), for plaintiff in error.

Griggs & Harding, of Paterson, N. J. (John W. Griggs and John W. Harding, both of Paterson, N. J., and Richard E. Dwight and Oscar R. Ewing, both of New York City, of counsel), for defendant in error.

Before BUFFINGTON and DAVIS, Circuit Judges, and McKEEHAN, District Judge.

McKEEHAN, District Judge. On December 6, 1913, John C. Tierney and the Passaic Valley sewerage commissioners entered into a written contract under which Tierney agreed to construct what was known as section 1 of the Passaic Valley sewerage works, the work consisting of manufacturing and laying 4,500 feet of concrete pipe in New York Bay, for the purpose of discharging into that bay the sewage from the Passaic Valley. There were to be two parallel lines of 96-inch pipe, each 1,500 feet in length, beginning at a point off Robbins Reef, in New York Bay, and extending towards shore. At the offshore extremities of each of these lines there was to be an elbow, one turning towards the north and the other towards the south, and the outshore pipes beyond this point were called specials or fingers, and had attached to them the diffusion nozzles through which the sewage was to be emptied into the bay. These specials or fingers gradually tapered from a diameter of 94 to a diameter of 24 inches. The work was to be completed on or before November 15, 1916.

In June, 1917, when the work had been partially completed, the defendant's chief engineer certified that the work had been unreasonably and unnecessarily delayed, and that Tierney had abandoned it, whereupon the commissioners canceled the contract. Tierney brought suit in the District Court for the District of New Jersey for breach of contract, and recovered a judgment for $183,481.53; this amount including the profits he would have made, had he been permitted to complete the work. From this judgment the defendant prosecutes a writ of error to this court.

After a thorough examination of the voluminous record and briefs of counsel, we think the judgment should be affirmed. On the view we take of the case, it is unnecessary to discuss all of the many questions raised by the assignments of error, though all of them have had our careful consideration. The case turns upon whether the defendant warranted that the methods prescribed by the plans and specifications for supporting the pipes and for making the joints between the pipes water-tight were adequate to accomplish the purpose in view, and whether these methods were in fact adequate for such purpose. The plans and specifications were prepared by the chief engineer of the commissioners, and the contract required that the work should be done in accordance therewith, subject to such modifications and additions as might be deemed necessary by the commissioners' chief engineer, who was given broad powers to make corrections of errors or omissions in the plans and specifications, and to make alterations in the line, plan, grade, form, dimensions, or materials of the work, with the provision that, if such alterations increased the amount of work, such increase should be paid for.

Difficulties were encountered almost from the start, one of them having to do with making the joints between the sections of pipe water-tight. The contract provided that, after each section of pipe had been forced into permanent position with the adjoining section by hydraulic or other power, the space between the flanges should be caulked by divers with oakum and 2½ inches of "lead wool"; the lead to be caulked into both the interior and exterior portion of the joint space. The pipes were then to be tested by a hydraulic pressure of 3 pounds per square inch, and if the leakage in a 100-foot length of pipe should exceed a quarter of a gallon per hour for each foot of pipe "the joints shall be recaulked, and such other additional measures taken as may be necessary to reduce the leakage to within the limit." During the year 1914, the contractor laid 13 of the 96-inch straight pipe on the north line, but not one successful test was secured by merely caulking the joints in the manner provided in the contract. The contractor resorted to various expedients to reduce the leakage to within the required limit. He tried covering the joints with clay. Pine wedges were used. The joints were surrounded with concrete collars, and the oakum was soaked in a tar preparation known as "Hydrex." None of these measures proved effective, and several witnesses called by the plaintiff testified that the design of the joints was fundamentally defective, and that nothing that the contractor could have done could have overcome the faulty design and made the joints tight. There was no denial of this testimony.

The other difficulty encountered had to do with supporting the pipes. The contract provided that the pipes should be laid on blocks consisting of 6-inch by 12-inch sound spruce timber 7 to 9 feet long. Wedges 12 inches long, of 4-inch by 4-inch spruce, were to be placed on the blocking to hold the pipes in position, "and any blocking

1 F. (2d)—20

that has been sunk too deep shall have additional blocking placed upon it to support the pipes at the required elevation." This method proved effective as to a portion of the pipe that was laid, but as the work progressed, and extended to the 84-inch pipe on the north line of specials or fingers, it was found that the bottom was too soft to support the blocks; the undenied fact being that over a considerable portion of the area in which the pipe was to be laid the bottom of the bay at the prescribed grade consisted of so-called Hudson River silt, a soft material of a consistency about equal to that of thick soup. Here again several witnesses called by the plaintiff testified that it was utterly impossible to support the pipes throughout that area at the prescribed grade by blocks, and there was no denial of this testimony.

[1, 2] We think it clear that the provisions of this contract implied a warranty by the defendant that the caulking of the joints, if properly done, would prevent a leakage beyond the amount allowed, and that the placing of blocks and wedges under the pipes would support them at the prescribed grade, under the well-settled rule that, if a contractor is bound to build according to plans and specifications prepared by the owner, the contractor will not be responsible for the consequences of defects in the plans and specifications. United States v. Spearin, 248 U. S. 132, 39 Sup. Ct. 59, 63 L. Ed. 166. Tierney repeatedly called the defendant's attention to the inadequacy of the caulking and the blocks to make the joints tight and support the pipes, and urged the defendant to adopt other methods. The answer always was that the caulking, if properly done, and the blocks, if properly laid, would accomplish the desired results, and in response to the plaintiff's suggestion that piling should be used for a support, he was told that he could use piling if he wished to, but at his own expense. Certain borings had been made by the defendant and appear on the blueprints that formed a part of the specifications. These blueprints stated that the bottom at the points indicated consisted of "mud, sand, and clay," though there was added a note that, while the borings were supposed to be approximately accurate, "should they be found to be otherwise, the contractor shall have no claim on this account; it being expressly understood that the commissioners do not warrant the plot to be approximately correct." A similar provision appears in the body of the contract.

The defendant relies upon these provisions, and a further provision in the printed form of bid that the contractor had carefully examined the location of the proposed work; also upon a provision that the contractor "shall bear all losses resulting to him on account of the amount or character of the work, or because the nature of the land in or on which the work is done is different from what was estimated or expected," and upon a provision that the contractor should have no claim "on account of any loss arising from any unforeseen obstruction or difficulty encountered in the prosecution of the work." But all this is no answer to the proposition that the prescribed method of supporting these pipes was blocking, and that if any blocking sank too deep the prescribed remedy was additional blocking. This clearly involved a warranty that, whatever the bottom consisted of, blocking would be adequate to support the pipes. As was said by Mr. Justice Brandeis in the very similar case of United States v. Spearin, supra: "But the insertion of the articles prescribing the character, dimensions, and location of the sewer imported a warranty that, if the specifications were complied with, the sewer would be adequate. This implied warranty is not overcome by the general clauses requiring the contractor to examine the site, to check up the plans, and to assume responsibility for the work until completion and acceptance."

The trial judge submitted to the jury the question whether the defendant had warranted that the methods prescribed by the plans and specifications would in fact produce the desired result, and also the question as to whether there had been a breach of that warranty. In view of the terms of the contract, we think he would have been justified in giving binding instructions as to the terms of the warranty, and, in view of the undenied testimony as to the impossibility of performance, we are inclined to think that binding instructions that there had been a breach of the warranty, would not have been error.

[3] On November 12, 1913, prior to the execution of the contract, and while the plaintiff was preparing his estimate, he wrote to the defendant's engineer, asking several questions regarding the meaning of the contract. In this letter he expressed a doubt as to whether the bottom at the grade prescribed would sustain the weight of the pipes, and asked whether, if it should be found advisable to reinforce the foundation

with piling, the defendant would pay for this, to which inquiry the defendant's engineer replied on November 13th: "Such borings as have been made in this vicinity indicate at the depths shown that the bottom will be hard. It will be necessary to block up pipes on this bottom to an even grade. Any special foundation that the engineer may deem necessary to order will be paid for." The trial judge admitted this reply, not as a construction of the contract, but as bearing on the plaintiff's contention of deceit. Of this the defendant complains. Without discussing or deciding the question, we may observe that, if any error was involved in the submission of this question, it was harmless error, since the court specifically instructed the jury that a verdict based on deceit could not include anticipated profits, whereas the amount of the verdict proves that the jury did include such profits.

[4, 5] Under the contract, the plaintiff was to be paid "for furnishing and placing straight and curved reinforced concrete outfall pipes and vertical and horizontal branches, * * * $85 per linear foot." There was a dispute as to whether, in computing the number of linear feet of pipe, the vertical and horizontal branches should be included. There being nothing in the contract that shed any light on the intention of the parties as to this, and the plaintiff having offered evidence of a trade custom under which the branches should be included, the learned trial judge left the matter, including the question of the existence of the custom, to the jury, and rightly so. The contract provision authorizing the defendant's engineer to determine, inter alia, the "amount * * * of the several kinds of work and materials which are to be paid for hereunder," vested him with authority to make measurements, but not to determine what was to be measured. "The contract, then, not providing for the method of measurement, how shall it be decided, except by the custom of the place where the contract is made and performed?" Walker v. Syms, 118 Mich. 183, 76 N. W. 320.

[6, 7] Article XIII of the contract provided, inter alia, that "if the work to be done under this contract shall be abandoned, * * * or if at any time the engineer shall be of opinion, and shall so certify in writing to the commissioners, that * * * the work or any part thereof is unreasonably or unnecessarily delayed, * * * the commissioners may notify the contractor to discontinue all work or any part thereof." On June 26, 1917, the defendant's engineer certified that the work under the contract had been abandoned and unreasonably and unnecessarily delayed, whereupon the defendant ordered the plaintiff to discontinue. The defendant insists that, there being no evidence of fraud, the engineer's certificate was conclusive and binding on the plaintiff. The trial judge left to the jury the question of whether the engineer's certificate was "wrongful," instructing them that this "would depend upon your determination of the questions left to you in my principal charge," which were whether the defendant had made and breached warranties that the plans and specifications were adequate to accomplish their purpose, and whether the plaintiff had been induced by misrepresentations to make the contract. In this we see no error. Whether the plaintiff had unnecessarily and unreasonably delayed depended upon whether the defendant had warranted the sufficiency of the plans and specifications and whether there had been a breach of any such warranty. Certainly this contract conferred no power upon the defendant's engineer to decide whether such a warranty existed. It did exist as a matter of law, and the evidence of its breach was convincing and undenied. As was said in McAndrews v. Tippett, 39 N. J. Law, 105: "To have held, according to the insistment of the defendant, that any delay occasioned by his own acts or omissions could be made the ground for avoiding the contract against the will of the plaintiff, would have been to permit the defendant to take advantage of his own wrong."

The judgment is affirmed.