## MONTROSE CONTRACTING CO., Inc., v. WESTCHESTER COUNTY.

### No. 148.

Circuit Court of Appeals, Second Circuit.

Feb. 7, 1938.

William A. Davidson, Co. Atty., of White Plains, N. Y. (Francis J. Morgan, of Yonkers, N. Y., and Frank J. Claydon, of White Plains, N. Y., Deputy Co. Attys., of counsel), for appellant.

Wait, Wilson & Newton, of New York City (Frederick W. Newton and Howard G. Wilson, both of New York City, of counsel), for appellee.

Before MANTON, L. HAND, and CHASE, Circuit Judges.

MANTON, Circuit Judge.

This appeal is from a judgment entered on a jury's verdict for appellee. The cause was here before and we reversed a judgment for the appellant entered on a directed verdict and ordered a new trial, 2 Cir., 80 F.2d 841, certiorari denied, 298 U.S. 662, 56 S.Ct. 746, 80 L.Ed. 1387.

The theory of appellant's liability, which we held should be retried, was that it had breached its contract with appellee, who agreed to construct a sewer in a tunnel beneath the streets of the city of Yonkers, Westchester county. The contractor's claim is that the appellant represented that this tunnel work was a "free air" job with the exception of about 600 feet and that this was a misrepresentation, since in performing the work it became necessary to construct 6,142 feet of the total distance of 8,553 feet by the use of compressed air. This increased the cost of the work, for which a recovery has been had.

On the former appeal we stated the facts in considerable detail and indicated the reasons why, on the proof there, a jury question was presented. The testimony on this, the second trial, not only repeats that of the first trial, but the witnesses called by the appellant corroborate the appellee's claims that the methods of construction set forth in the specifications were suitable for a free air tunnel and were employed where portions of the tunnel were built in free air. "Free air" methods could not be used in the portions of the tunnel built by the contractor in compressed air.

Appellant's expert witnesses admitted that the specifications for the work were normally those drawn for "free air" tunnel construction. Appellant's engineers admitted that the 600 feet allowed in the contract for compressed air work was an arbitrary figure and had no relationship whatsoever to the true amount of the compressed air work, and it was shown that the representations so made were prepared in the chief engineer's office, notwithstanding the fact that the appellant's engineers knew at that time that from 3,000 to 6,000 feet of the tunnel would require compressed air.

Whether or not, in view of the boring sheets, exhibited to appellee before bidding and the mark thereon, "Water Level," the contractor had the right to rely on the warranty contained in the contract and specifications, was a jury question under the evidence in this record. In a very well-considered charge, the learned judge below submitted the questions to the jury and they have found against the appellant. In such submission, the court directed the attention of the jury to the contract provision requiring that the bidder make a personal examination of local conditions and the court charged that, if the

582

inspection of the site by appellee's engineers should have shown them that the representations contained in the contract were false, appellee was not entitled to rely on the misrepresentations. This record supports the jury's determination of that issue in favor of the appellee. We said when the case was here before:

"In all these, methods suitable for a free air job and impossible of use in a compressed air job were specified in the contract. The stipulation that these free air methods be used was a representation that the job was free air tunnel construction work. Where one party furnishes specifications and plans for a contractor to follow in a construction job, he thereby impliedly warrants their sufficiency for the purpose in view. [citing authorities.] The specifications outlined above would be adequate only where the tunnel was to be built in free air. Thus the appellee, setting out these specifications to be followed, impliedly warranted the tunnel was substantially a free air job. Whether the builder was damaged in proceeding with the work in reliance on this implied warranty, as in the cases supra, or whether he was damaged in relying on the warranty in making his bid, as he did here, he may recover. [citing authorities]."

■ In submitting the case to the jury, the court instructed them that the contractor claimed that it relied on these representations in preparing its bid; that, if it did not in fact rely on the representations in the contract or if it did not have a right to rely on them, as he explained later, the appellee could not recover damages, although the appellant prepared the contract, plans, and specifications, because appellant could not be held liable for erroneous representations in the contract, plans, and specifications unless such representations could fairly be said to have actually influenced the appellee to make the bid it submitted. And the court properly said that the representations of the contract that the tunnel was substantially a free air job are equally binding on the appellant whether they were merely erroneous, innocently made or fraudulently and wilfully false. And he called the attention of the jury to the respective claims of the parties, saying:

"Plaintiff contends that instead of this being substantially a free air job, with about 600 feet of compressed air tunnel work, it was obliged to build 6142 feet of the tunnel in compressed air out of a total of 8553 feet. The defendant has offered evidence, some of it through the commission's engineers and some through experts, to show that this was not essentially or substantially a compressed air job and that most of it could have been done in free air by various methods such as sinking wells and pumping therefrom."

This charge was in accord with our previous ruling and sufficiently presented the issues as to liability to the jury.

■ On this record it was shown by appellee's testimony and admissions by the appellant's engineers that the specifications and supplementary specifications indicated a normal or free air job and that compressed air was not necessary except for 600 feet and, as the work progressed, it became necessary to use compressed air in its prosecution. It was shown that most of the borings had been made for the tunnel as originally designed at a higher elevation than under the final designs shown on the contract drawings. After the change of design, the engineers attempted to obtain additional borings down to the new level of the tunnel, but, due to boulders encountered and length of time required for new borings, the attempt was abandoned. It appears that most of the borings except those that struck rock were useless because they did not penetrate to the tunnel level. The county engineers did not check the work of those who prepared the boring samples which were exhibited to the contractor prior to the bidding. Appellee's witnesses testified as to these borings that only four of them in a distance of 6,998 feet penetrated to the depth of the tunnel and they were of little or no use in determining the type of tunnel construction which would be required. Therefore the jury could have found, as they did, that these borings would not justify holding that the appellee had reliable information to indicate the contrary of the appellant's representation that this was a free air tunnel job.

■■ The contract included not only the terms "set forth in express words, but, in addition, all such implied provisions as are indispensable to effectuate the intention of the parties and as arise from the language of the contract and the circumstances under which it was made." Sacramento Nav. Co. v. Salz, 273 U.S. 326, 329, 47 S.Ct. 368, 369, 71 L.Ed. 663. The contract provision specifying that not more than 600 feet of compressed air work would be paid for regardless of whether more was required

does not relieve the appellant from liability for its misrepresentations. U. S. v. Atlantic Dredging Co., 253 U.S. 1, 40 S.Ct. 423, 64 L.Ed. 735; Hollerbach v. United States, 233 U.S. 165, 34 S.Ct. 553, 58 L.Ed. 898; United Construction Co. v. Town of Haverhill, 2 Cir., 9 F.2d 538, 540.

This voluminous record contains 340 assignments of error. It is necessary to consider but a few of these, although they have been severally examined.

■ A tabulation is made of the questions asked of all the witnesses by the trial judge, and appellant argues that from an analysis of thousands of questions asked the court erred by being too inquisitive. It has often been repeated that a trial judge in the federal courts is more than a mere arbitrator to rule upon objections as to evidence and to instruct the jury as to the law. He may and should take an active part in the examination of witnesses if he considers that the course of justice requires it. It is his function to elicit all the material evidence and assist in making straight the path of justice. Particularly was this true when it appeared to the learned judge below, engaged in a very long trial, that there was an insufficient or improper elucidation of the provable facts. Young v. Corrigan, D. C., 208 F. 431, 438. As said in Capital Traction Co. v. Hof, 174 U.S. 1, 14, 19 S.Ct. 580, 585, 43 L.Ed. 873: "And thus, as the jury assists the judge in determining the matter of fact, so the judge assists the jury in determining points of law, and also very much in investigating and enlightening the matter of fact whereof the jury are the judges."

This jury properly had the advantage of close observation, attention, and assistance by a capable judge in the elucidation of the evidence at the trial, and this he did accomplish by intelligent inquiry of the witnesses. See Lewis v. United States, 6 Cir., 11 F.2d 745, 747. It is unnecessary for us to consider the various individual witnesses interrogated by the court, for it is sufficient merely to say that the court was well within its province in attempting to ascertain the truth and is not subject to the criticism now advanced. It became necessary several times to require counsel to return to the issues on trial and the court did so with a wise exercise of discretion. These assignments of error are without merit.

■ Error is assigned as to the refusal to admit Appellant's Exhibit YYYYY. This was a statement of figures made by appellant's expert as to what was a fair and reasonable cost of the work for the entire job which he said was $1,061,533 and included an item of $100,000 profit. This expert was asked: "Q. In your opinion, what is the fair and reasonable cost for the construction of this job?" An objection to the question was sustained and then Exhibit YYYYY was offered and refused admission. It is clear from his testimony that the question referred, as did Exhibit YYYYY to the entire job and not the additional cost. The excluded evidence purported to show a reasonable cost for the entire job including parts that were actually done in free air as well as parts that were done in compressed air. The costs as to those parts of the job done in free air were irrelevant in this case and, since there was no way for the jury to ascertain from the excluded evidence what portion of the costs for the entire job were allocable to compressed air, the evidence had no probative value to show that appellee's increased costs on account of the use of compressed air were extravagant or unreasonable.

The court had announced the rule of damages applicable as to which he later instructed the jury, and gave counsel an opportunity to offer proof accordingly. After a three-day recess, the suggestion was followed by the appellant. The court charged that only actual damages might be recovered and these must flow from appellee's having relied on appellant's representations in the contract that the tunnel construction would be substantially a free air job. He said: "The measure of damages for breach of this contract, where the contractor has proceeded and completed the contract, is the increased cost to the contractor by reason of the construction of more than 600 feet of tunnel in compressed air, in as much as such increased cost was fair and reasonable under the circumstances."

■ He then proceeded to call their attention to the various items claimed by the appellee to have been its additional cost which it expended in good faith and in the reasonable performance of the contract. The appellee had been paid the contract price for the footage of tunnel on the free air basis, and it was the amount of the actual increased cost for materials, labor, and other items—the actual expenditures per foot—which the court submitted to the jury for consideration.

The applicable rule of damages as charged, followed United States v. Behan, 110 U.S. 338, 4 S.Ct. 81, 28 L.Ed. 168 and United States v. Spearin, 248 U.S. 132, 39 S.Ct. 59, 63 L.Ed. 166. In the Behan Case the court said: "The claimant ought at least to be made whole for his losses and expenditures. * * * If they were foolishly or unreasonably incurred, the government [defendant] should have proven this fact. It will not be presumed. * * * The claimant might also have recovered the profits of the contract. * * * The prima facie measure of damages for the breach of a contract is the amount of the loss which the injured party has sustained thereby. * * * But when he elects to go for damages for the breach of the contract, the first and most obvious damage to be shown is the amount which he has been induced to expend on the faith of the contract, including a fair allowance for his own time and services. * * * It does not lie, however, in the mouth of the party, who has voluntarily and wrongfully put an end to the contract, to say that the party injured has not been damaged at least to the amount of what he has been induced fairly and in good faith to lay out and expend, * * * at least it does not lie in the mouth of the party in fault to say this, unless he can show that the expenses of the party injured have been extravagant, and unnecessary for the purpose of carrying out the contract." At pages 344, 345 of 110 U.S., 4 S.Ct. 81, 83, 28 L. Ed. 168.

█ Appellee proved sufficiently its items of increased cost for labor, insurance, wages, materials, power, plant, and overhead to warrant the verdict of the jury. The exhibit excluded was not in refutation of the appellee's claims as to these items. Neither the expert nor the exhibit excluded show that any of the items were extravagant or unnecessary. The appellant was permitted to refute appellee's figures of cost and criticize them, on the basis of an accountant's examination of appellee's books and the testimony of experts. No error was committed in excluding the testimony or the Exhibit YYYYY.

█ Error is assigned because of the limitations placed upon the number of experts called by the appellant. Two additional experts were offered by appellant whom the court refused to hear, having first given notice of the limitation as to numbers. The testimony of these two experts was said to relate to matters already covered by other experts for the defense. A court can, in the exercise of sound discretion, limit the number of expert witnesses. American Stove Co. v. Cleveland Foundry, 6 Cir., 158 F. 978; Swope v. Seattle, 36 Wash. 113, 78 P. 607; Southern Pacific v. Marquez, 9 Cir., 44 F.2d 286, 287; Washington Times v. Bonner, 66 App.D.C. 280, 86 F.2d 836, 110 A.L.R. 393.

Other alleged errors referred to in the brief are without merit and require no further consideration.

Judgment affirmed.