### MIDDLE WEST CONST., Inc., v. METROPOLITAN DIST. OF HARTFORD, CONN.
### No. 84.

Circuit Court of Appeals, Second Circuit.

Feb. 5, 1943.

Ufa E. Guthrie, of Hartford, Conn., for appellant.

W. Arthur Countryman, Jr., of Hartford, Conn., for appellee.

Before SWAN, AUGUSTUS N. HAND, and CHASE, Circuit Judges.

SWAN, Circuit Judge.

The action resulting in the judgment on appeal was brought in the District Court on the ground of diverse citizenship, the plaintiff being an Ohio corporation and the defendant a municipal corporation organized under the laws of Connecticut. The parties had entered into a contract dated June 16, 1937, which called for the construction by the plaintiff of a section of an intercepting sewer in the city of Hartford.

The work was to be completed by December 31, 1937 and payment was to be made according to unit item prices listed in the contract. The total cost of the sewer, so figured, came to $136,639.93, but from this sum the defendant deducted $3,540 under a clause of the contract providing for liquidated damages for delay in completion. The contract also provided that the work was to be done under the superintendence and to the satisfaction of the defendant's engineer. It is the theory of the plaintiff's action that various items of work were extras or were required by the engineer to be performed in a manner not contemplated by the contract and that consequently it became entitled to additional compensation and to additional time for completion of the sewer. The complaint contains fifteen claims for extra compensation aggregating more than $60,000, and one for recovery of the sum retained by the defendant as liquidated damages. A jury having been waived by stipulation the case was tried to the court. After a lengthy trial detailed findings of fact were made by the trial judge as to each of the sixteen claims. He found that none of the claims for extra compensation was substantiated by the proof but that the defendant had deducted $2,200 more than it was entitled to retain for liquidated damages. A judgment for this sum plus costs of the action was entered in the plaintiff's favor. It has appealed.

■ The theory of the appeal is that the trial judge erred either in construing the contract or in denying recovery on some equitable principle because the work proved more costly than the plaintiff's estimate in making his bid; in other words, that the contractor is entitled either "under the contract or outside of the contract" to recover on all of its asserted claims. Many authorities dealing with situations involving construction contracts have been cited in the appellant's briefs, but in our opinion the principles of law they announce are inapplicable to the contract in suit under the facts found by the trial judge; and these findings we must accept unless they are shown to be clearly erroneous. Federal Rules of Civil Procedure, rule 52, 28 U.S.C.A. following section 723c.

The contract is a voluminous document comprising more than eighty printed pages; it is supplemented by four blue print plans which it incorporates by reference. Perusal of it indicates plainly that it was intended to cover all matters connected with the work contracted for. The matters of changes and extra work were provided for expressly. The provisions make the filing of a claim in writing within specified times a condition precedent to the contractor's right to receive additional compensation. This condition was not complied with in respect to any of the fifteen claims for extra compensation; nor was it waived. The evidence supporting these findings of the trial judge need not be reviewed; it will suffice to say that it was amply sufficient.

■ The first and largest claim is based on what is called preformed cradle construction. This was ordered to be used in certain places to prevent the heavy sewer pipe from sinking into soft ground. It required pouring the concrete cradle and allowing it to harden before the pipe was laid upon it. The dispute is whether this type of construction was an extra or was called for by the contract and whether it delayed the work and caused some of the contractor's men to remain idle while the cradle was hardening. Although the specifications do not describe preformed cradle construction and say nothing about allowing time for the cradle to harden, the blue print plan, exhibit C, shows this type of construction as Type C and the specifications provide that the plans and specifications are intended to be cooperative and that all works necessary to the completion of the contract shown on the plans are to be considered as properly described in the specifications. The district judge was of opinion, and we agree, that exhibit C makes it sufficiently clear that the cradle of Type C construction would have to be preformed. The engineer so interpreted the specifications and plans and the contractor made no objection at the time the work was performed that it was an extra or would delay completion of the contract. The court did not err in construing the contract to cover this type of construction.

■ The second claim is for alleged expense and delay incurred by the necessity of having to pump excess ground water instead of turning it into a projected sewer south of Farmington Avenue which was to be constructed by a different contractor. This claim is based on the contention that the plaintiff was misled into believing that the projected sewer would supply an outlet because of dotted lines shown on the blue

print plan, exhibit B. The plaintiff was on notice that its contract was but part of a larger project and exhibit B itself showed that the point marked as the "Beginning of Contract No. 18" (plaintiff's contract) was the "End of Contract No. 16." There was no justification for assuming that the dotted lines indicated an existing sewer. Moreover, several weeks before Mr. Ciraci signed the contract on behalf of the plaintiff he knew that there was no outlet at Farmington Avenue (Testimony p. 386). The claim was properly held untenable.

 The third claim was for extra compensation for removing underground structures near Woodside Circle. A gas pipe and a water main were not located precisely in the positions indicated on the plans and the stone foundation of an old house was not shown on the plans because its existence was not known. The contract is very clear that the contractor was to assume the risk of encountering underground structures, whether shown on the plans or not, and was to do everything necessary with respect to them without additional expense to the District. No claim in writing was made when the work was being done. The contractor cannot fairly contend that the work constitutes extras under the contract without complying with the contract provisions as to extras. The claim involves only work covered by the terms of the contract.

One other large claim, No. 15, sought compensation for winter work on the theory that completion of the contract had been delayed by the defendant's requirement of the work claimed as extras in the other claims. This was rejected on the finding that the delays were not due to any deviation by the defendant from the terms of the contract. The contract was correctly construed and the evidence supports that finding. The contract provided that no claim for an extension of time should be allowed unless within three days after the delay occurs notice in writing of the causes of the delay and the extension claimed should be given by the contractor to the engineer. Two letters were written claiming extensions of time, one in August and one on December 23, 1937. Neither asserted any of the reasons now put forward for this claim.

The remaining claims involve relatively small amounts. In our opinion it is unnecessary to consider them seriatim and point out with respect to each one the particular contract provision applicable to the facts as found by the trial court. It will suffice to say that we have carefully examined the record and briefs and are convinced that no liability was established against the defendant in excess of the amount which the judgment awarded.

The contention that, if the plaintiff cannot recover under the contract, it should be allowed recovery "outside of the contract" cannot be sustained on the record. There was no fraud, misrepresentation or misleading by the defendant in the plans and specifications upon which the contract was based. In this respect the case is readily distinguishable from Montrose Contracting Co. v. Westchester County, 2 Cir., 94 F.2d 580 where the contract represented that there would be about 600 feet of compressed air tunnel work but more than 6,000 feet proved to be of this character. The contract provisions were not waived by the District and no new agreement was made to pay more than the original price. Merely because the contract proved unprofitable to the plaintiff the contract provisions may not be disregarded.

The judgment is affirmed.