## UNITED STATES v. ATLANTIC DREDGING COMPANY, W. B. BROOKS, AGENT.

### APPEAL FROM THE COURT OF CLAIMS.

No. 214. Argued March 16, 1920.—Decided April 26, 1920.

The specifications upon which a dredging contract was based described the materials to be removed as believed by the Government to be mainly mud and fine sand; declined to guarantee the accuracy of the description; required bidders to examine and decide for themselves; referred them to maps exhibiting results of test borings made by the Government, confirming the description; declined to guarantee that such borings actually represented the character of the bottom over the entire vicinity in which they were taken, but expressed the Government's belief that the general information thereby given was trustworthy. The representations were deceptive in that the test borings gave information to the Government not imparted to bidders, of materials more difficult to excavate than those shown by the maps and specifications.

Held: (1) That a contractor which relied upon such representations of the results of the borings and of the Government's belief based thereon, and whose reliance was confirmed by the Government's approval of its plant,—adapted only to the lighter materials and submitted for inspection as to its adequacy pursuant to the specifications,—was entitled to stop work after part performance

(1)

and recover the difference between the cost of the excavation done and the amount received under the contract. P. 9.

(2) That this right was not lost by proceeding with the work and entering into a supplementary contract, after the heavier materials were encountered, but before the contractor learned of the results of the test borings and that they were inadequate. P. 11.

(3) That the cause of action was in contract, not in tort. P. 12.

53 Ct. Clms. 490, affirmed.

ACTION in the Court of Claims to recover the sum of $545,121.72 from the United States on account of expenditures and loss caused, it is alleged, in the execution of a contract which claimant was induced to enter into by false and misleading statements of the officers of the United States in charge of excavations in the Delaware River.

In pursuance of advertisement by the United States through Colonel Kuhn, the dredging company entered into a contract to do a certain part of the work for the sum of 12.99 cents per cubic yard, scow measurement.

Sealed proposals were required by the advertisement and it was stated that information could be had on application, and bidders were invited to base their bids upon the specifications which had been prepared, and were submitted, by the Government.

The specifications stated that the depth of the channel to be dredged was thirty-five feet, and under the heading "Quality or Character of the Material," contained the following: "The material to be removed is believed to be mainly mud, or mud with an admixture of fine sand, except from Station 54 to Station 55+144, at the lower end of West Horseshoe Range [the latter is not included in the contract] where the material is firm mud, sand, and gravel or cobbles." It was stated that "bidders are expected to examine the work, however, and decide for themselves as to its character and to make their bids accordingly, as the United States does not guarantee the accuracy of this description."

The further statement was that "a number of test borings have been made in all of the areas where dredging is to be done under these specifications, and the results thereof may be seen by intending bidders on the maps on file in this office. (See paragraph 17.) No guaranty is given as to the correctness of these borings in representing the character of the bottom over the entire vicinity in which they were taken, although the general information given thereby is believed to be trustworthy."

To ascertain the character of the material to be dredged the Government officers had subjected the bottom of the river to certain borings, called according to their manner of being made, "test borings and wash borings," and the results thereof were correctly reported and recorded on the log or field notes at the time, that is, that the probe had penetrated or had not penetrated, but there was nothing on the map exhibited to bidders showing the field notes taken at the time the borings were made. It was hence shown that the material to be encountered was "mainly mud, or mud with an admixture of sand." In other words, the map did not contain a true description of the character of the material which was to be encountered, and was encountered, by the dredging company in the prosecution of the work. The material dredged, at certain places, differed from that shown on the map exhibited to bidders. The company made no independent examination, though it had time to do so, and in making its proposal it stated that it did so with full knowledge of the character and quality of the work required.

The proposals required the character and capacity of the plant proposed to be employed by the contractor to be stated and that it should be kept in condition for efficient work and be subject to the inspection and approval of the "contracting officer." In compliance with the requirement the plant was submitted to such officer and by him inspected and approved. It was efficient for dredging

the character of material mentioned in the specifications and described on the map to which bidders were referred for information; it was not efficient for dredging the material actually found to exist, and the company secured the services of another concern to do the dredging for it, and that concern did all of the work that was done.

After the company, and the concern it had employed, had been at work for some time, it complained of the character of material which was being encountered, and a supplementary contract was entered into by it and the "contracting officer."

This contract recited that "heavy and refractory material, consisting mainly of compacted sand and gravel, with a small percentage of cobbles, had been encountered" and provided that such material might be deposited in the Delaware River instead of on shore, as provided in the original contract.

At the time of making the supplemental contract the company was not aware of the manner in which the "test borings" over the area embraced in its contract had been made. Upon learning of this in December, 1915, it discontinued work and declined to do further work. The company then had not been informed of the fact that impenetrable material had been reached by the probe. At the time of the cessation of work there remained approximately 350,000 cubic yards of material to be dredged in the area of the contract. The American Dredging Company completed the dredging at 16.2 cents per cubic yard.

The amount expended by the company was $354,009.19 upon which it had received $142,959.10 making its loss on the contract $211,050.09. For such sum judgment was rendered and the United States prosecuted this appeal.

Mr. Assistant Attorney General Davis for the United States:

There was no misrepresentation in fact or in law by

which claimant was justified in rescinding the contract and suing for damages. *Southern Development Co.* v. *Silva,* 125 U. S. 247, 250. There is no claim that by the action of the Government it was prevented from completing its contract. Claimant's case must rest upon the theory that the Government made a representation which amounted to a warranty or guaranty.

But the Government made no positive statement as to the character of the material; the statements attributed to it are far from being as strong as those held to be mere expressions of opinion in *Southern Development Co.* v. *Silva, supra.* Claimant was shown the facts upon which the opinion was based; though urged to do so, it made its bid without making an independent investigation. It relied on a belief of the Government, knowing that it was only a belief.

Nor was there any concealment of a material fact with reference to the test borings. The specifications stated that test borings had been made, and the results. It is not apparent why, when the specifications showed that test borings had been made and the probe boring method was the one universally used, and no inquiry was made by claimant as to the manner in which they had been made, there was any duty on the part of the Government to state that the probe method had been used. Nor was there any duty to recite that the probe had struck impenetrable material. The specifications purported to show the materials actually encountered, nothing more. There was no recital as to how the test borings were made, but the material encountered was truthfully shown.

In *United States* v. *Stage Co.,* 199 U. S. 414; *Hollerbach* v. *United States,* 233 U. S. 165; *Christie* v. *United States,* 237 U. S. 234; and *United States* v. *Spearin,* 248 U. S. 132, positive statements were made as to material facts, which caused loss to the contractors which they would not otherwise have incurred.

The case falls in the class illustrated by *Simpson* v. *United States*, 172 U. S. 372, where the court refused to imply a warranty. In the case at bar there is no finding that any representation was made to claimant by any officer of the Government. Even if any such statement had been made, it cannot avail the claimant unless the representation is a part of the written contract. *Simpson* v. *United States, supra.* "Where one agrees to do, for a fixed sum, a thing possible to be performed, he will not be excused or become entitled to additional compensation, because unforeseen difficulties are encountered." *Spearin* v. *United States*, 248 U. S. 136.

Even had there been misrepresentation, claimant, by electing to proceed with the contract, ratified it and is estopped. 2 Pomeroy, Eq. Juris., 4th ed., §§ 916, 917; *Shappirio* v. *Goldberg*, 192 U. S. 232; *Wilson* v. *Cattle-Ranch Co.*, 73 Fed. Rep. 994; *Kingman & Co.* v. *Stoddard*, 85 Fed. Rep. 740; *Richardson* v. *Lowe*, 149 Fed. Rep. 625; *Ripley* v. *Jackson Co.*, 221 Fed. Rep. 209; *Gregg* v. *Megargel*, 254 Fed. Rep. 724; *Simon* v. *Goodyear Metallic Rubber Shoe Co.*, 105 Fed. Rep. 573. That there can be no question as to its election and that it is estopped is further shown by the supplemental contract made after the work had been in progress for more than two years. Even if misrepresentation existed in regard to the first contract, claimant could not disregard the second and rely upon some claim with reference to the first to relieve it from the obligation of the second. *International Contracting Co.* v. *Lamont*, 155 U. S. 303, 309.

Claimant's action and the judgment below were both based, not upon contract, but tort. The Court of Claims had no jurisdiction. *Gibbons* v. *United States*, 8 Wall. 269; *Morgan* v. *United States*, 14 Wall. 531; *Schillinger* v. *United States*, 155 U. S. 163; *Juragua Iron Co.* v. *United States*, 212 U. S. 297; *Basso* v. *United States*, 239 U. S. 602; *Ball Engineering Co.* v. *White & Co.*, 250 U. S. 46; *Smith*

v. *Bolles*, 132 U. S. 125. The Court of Claims has failed to distinguish between cases where the damage is the loss occasioned by a wrongful act, and those where a claimant has recovered from the United States either because without any fault of his own he was prevented from completing the contract, or when, as in the *Christie Case, supra*, extra work was required for which the United States was responsible by warranty or otherwise. In these cases the damage is always for the amount necessary to compensate the claimant for the work done and can only be on the theory of *quantum meruit*. See *United States* v. *Behan*, 110 U. S. 338. Here the claimant abandoned the work and rescinded the contract on the theory that a false representation had been made to it and sued for its loss as damages. This it could not do, even if it had been prevented by the United States, without its fault, from proceeding with the contract, because it had rescinded it. *United States* v. *Behan, supra*. It sued for damages on account of the tort, a false representation. On the finding of facts, there could be no judgment in any amount on the ground of *quantum meruit*, for there is no showing as to what the dredging was reasonably worth, and the court was not considering what the work was reasonably worth, but only claimant's loss. This loss is only one of the elements and is not determinative at all.

*Mr. W. L. Marbury*, with whom *Mr. W. L. Rawls* was on the brief, for appellee:

This is an action for breach of a warranty or condition, consisting of the representations made by defendant in its specifications, with respect to the information which it had received, as shown by the maps, to which bidders were referred, in regard to the probable character of the material to be dredged, and also as to the grounds upon which it based its "belief" that the material would be

found to be "mainly mud, or mud with an admixture of fine sand."

The Court of Claims finds that the maps did not show the results of all the test borings which had been made; that two borings had been made, the results of which did not appear upon the maps, and the results of which would have disclosed the fact that material had been encountered in this area of a far more difficult character than that shown to have been found in the ten borings which had been recorded, and would have disclosed the presence of the kind of material which was actually encountered later, when the work was being done under the contract.

The court below having found as a fact the making of this representation, and the further fact that it was not true, the appellee is entitled to recover, as for a breach of warranty or condition. *United States* v. *Spearin*, 248 U. S. 132; *Anvil Mining Co.* v. *Humble*, 153 U. S. 540; *United States* v. *Stage Co.*, 199 U. S. 414; *Hollerbach* v. *United States*, 233 U. S. 165; *Christie* v. *United States*, 237 U. S. 234.

The appellee was justified in refusing to go on with the work when it discovered that the Government had failed to disclose upon the map two borings which had been made by it within that portion of the river covered by the contract in question, when it was definitely and specifically representing that the map showed the result of the borings which had been made by the Government. *United States* v. *Spearin*, 248 U. S. 132. See also cases cited, *supra*.

The *Christie* and *Hollerbach Cases* involved representations as to the character of the work to be done, and clearly establish that such representations are material. The point which those cases did not decide, which is involved here, is what are the rights of the contractor in such a case with respect to stopping work. In both

those cases and in the *Stage Co. Case,* the contractor completed his work under the contract, and claimed an additional amount for damages arising out of the misrepresentations.

The *Spearin Case* makes clear that a breach of warranty or condition, which relates to the character of the work to be done, goes to the root of the contract, and justifies the contractor in stopping work. It further holds that in such an event the contractor does not lose his rights under the contract, but may sue for its breach and recover the amount of his outlay, plus such profit as he would have made had he completed the work.

In *United States* v. *Behan,* 110 U. S. 345, the court says that, "when a party injured by the stoppage of a contract elects to rescind it," his recovery is upon the *quantum meruit.* The authorities are clear that a mere stoppage of the work or an abandonment of a contract, when this is justified by some breach of the contract by the other party, does not work a rescission of the contract in the sense that no right of action can be asserted thereunder by the party who was compelled by the act of the other party to abandon the fulfillment of the contract. To permit this would in effect allow one party by his own wrongdoing at any time to put an end to a contract. See *Anvil Mining Co.* v. *Humble,* 153 U. S. 540.

This is not an action sounding in tort. There is no charge of fraud and no finding of fraud. The petition charges certain misrepresentations, but there is no allegation and no attempt at proof that any of these was made with fraudulent intent.

After stating the case as above, MR. JUSTICE McKENNA delivered the opinion of the court.

The case turns upon the statement of the Government of its belief of the character of the material to be en-

countered, and, as misrepresentation, the omission from the map exhibited to bidders of the actual borings made and their disclosures.

The Government asserts that there was no misrepresentation, basing the assertion upon the declaration of the specifications that no guarantee was intended and the admonition to bidders that they must decide as to the character of the materials to be dredged, and to "make their bids accordingly."

The assertion puts out of view, we think, other and determining circumstances. There was not only a clear declaration of the belief of the Government that its representation was true, but the foundation of it was asserted to be the test of actual borings, and the reference to maps as evidence of what the borings had disclosed. The finding is that the maps contained a record of twenty-six borings as covering specified sections that were to be dredged, and of these ten were in the section of the river, which by its contract, afterwards made, the plaintiff agreed to dredge.

There was a further assertion of belief, through its "contracting officer," by the approval of the company's plant. As we have seen the Government's care of its interests extended to the inspection of the instrumentalities of the contractor, and required the character and capacity of the plant which was to be used, to be submitted for inspection and approval. In fulfillment of the requirement the company submitted its plant. It was only efficient for dredging material of the character mentioned in the specifications and described on the map, and it was so approved. The significance of the submission and approval are manifest. The character and capacity of the plant conveyed to the officer the fact that the company was accepting as true the representation of the specifications and the map of the materials to be dredged; and reciprocally the approval of the plant by the officer was an

assurance to the company of the truth of the representation and a justification of reliance upon it.

The case is, therefore, within the ruling of *United States* v. *Spearin,* 248 U. S. 132, 136, where it is stated that the direction to contractors to visit the site and inform themselves of the actual conditions of a proposed undertaking, will not relieve from defects in the plans and specifications, citing *Christie* v. *United States,* 237 U. S. 234; *Hollerbach* v. *United States,* 233 U. S. 165, and *United States* v. *Utah, Nevada & California Stage Co.,* 199 U. S. 414. It is held in those cases "that the contractor should be relieved, if he was misled by erroneous statements in the specifications." The present case is certainly within the principle expressed. In the cited cases there was no qualification of the requirement; in this case it was accompanied by the expression of belief, and conduct which was, in effect, a repetition and confirmation of the belief and gave assurance that it had a reliable foundation. The company, therefore, was justified in acting upon it.

The Government, however, contends that, at best, the alternative was presented to the company, when it discovered the character of the materials, to either quit work and sue for damages, or continue the work; and that having elected the latter, it cannot now resort to the other. In fortification of this contention it is said that "even if the Government had made a misrepresentation as to the borings, that misrepresentation would necessarily have been as to the character of the materials to be dredged, and claimant knew all there was to know about this from the 'very beginning.'"

This assumption and the extent of it and the conclusion from it, are not justified. It is true the company discovered that the material it encountered was different in character from that represented, but the company did not know of the concealment of the actual test of the borings, and the fact that the company attempted to

struggle on against the difficult conditions with its inefficient plant should not be charged against it. In other words, it should not now be held to have been put to the suggested election. It did not know at that time of the manner in which the "test borings" had been made. Upon learning that they had been made by the probe method, it then elected to go no further with the work, that is, upon discovering that the belief expressed was not justified and was in fact a deception. And it was not the less so because its impulse was not sinister or fraudulent.

The Government makes the point, however, that the implication of the case is that bad methods were used, and insists that the implication makes the action one for a tort, and not tenable against the United States. We cannot assent. There is no intimation of bad faith against the officers of the Government and the Court of Claims regarded the representation of the character of the material as the nature of a warranty; besides, its judgment is in no way punitive. It is simply compensatory of the cost of the work, of which the Government got the benefit.

*Affirmed.*

THE CHIEF JUSTICE and MR. JUSTICE CLARKE dissent.