ANTONIO COLARUSSO, Claimant, *v.* STATE OF NEW YORK.
Claim No. 16612.

Court of Claims, December, 1923.

Claims against state — contracts — highway department furnished con-
tractor data necessary for prosecution of work on state highway and
supervised job without advising him of failure of comptroller to approve
contract — claimant notified highway commissioner of breach on state's
part and demanded return of deposit on learning of failure of comptroller
to approve — state subsequently notified claimant contract was accept-
able — contractual relations did not exist between state and claimant
— subsequent execution of contract by state deemed ratification of
claimant's acts — when claimant entitled to judgment for actual cost of
work performed from date of execution of contract to suspension of work.

Claimant having been awarded a public highway contract which he executed on
October 16, 1919, loaded and transported five carloads of machinery, tools
and equipment to the site of the contract, where about two weeks thereafter
he met the county engineer and several other engineers employed by the state
highway department, who proceeded to fix the grades and place the stakes so
that claimant could go on with the work. Upon the completion of the prelimi-
nary work of the engineers an inspector in the employ of the highway department
was placed in charge under the supervision of the county engineer and he remained
there until claimant suspended work on or about December 16, 1919. At that
time the county engineer in reply to claimant's request for an estimate said
that he would furnish one but later on the same day advised claimant by telephone
that he would be unable to do so because the comptroller had not yet approved
the contract. Thereupon the claimant immediately stopped the work, verified
in the office of the highway department the information received by him from
the county engineer and performed no further work under the contract. On
January 13, 1920, the contract not having yet been approved by the comptroller,
claimant, upon notifying the commission of highways that he considered that the
state had broken the contract demanded the return of his deposit, accepted by
the state in lieu of a bond, together with the amount of money he had earned
and such damages as he had sustained. An estimate of the work done and
materials in place up to and including January 28, 1920, was on that day received
by claimant from the commission of highways, unaccompanied by a draft. On
March 3, 1920, claimant was notified that the contract had on that day been
executed on the part of the state. Two days thereafter he was furnished with
a copy of said contract and on March 8, 1920, received a draft in payment of
the estimate furnished to him, which he returned. *Held,* that as during the
progress of the work and up to January 13, 1920, when claimant repudiated the
contract, no contractual relations existed between him and the state, his claim
for damages upon the theory of a breach of contract cannot be sustained.

The action of the state in executing the contract after knowledge of the work done
and that claimant acting within his rights had repudiated the contract, amounted
to a ratification of his acts and an acceptance of the work and claimant was,
therefore, entitled to judgment for the actual cost of the work performed by him
up to December 16, 1919, and in addition to judgment for the amount of his
deposit, with interest from October 16, 1919.

*Belmar Contracting Co., Inc.,* v. *State of New York,* 233 N. Y. 189, distinguished.

Claim for breach of highway contract.

*Benjamin McClung,* for claimant.

*Carl Sherman,* attorney-general (*Henry P. Nevins,* deputy attorney-general), for State of New York.

Corwin, J. On October 15, 1919, claimant was awarded a contract to construct and complete the improvement of that section of the public highway known as the Copake-Mount Riga, parts 1 and 2, highway No. 8009; and on the following day executed such contract, there being retained out of the check which accompanied his proposal the sum of $7,490.58, which the state held in lieu of a bond. Within a few days thereafter claimant notified the county engineer that he was ready to commence work and called upon the county engineer to furnish the grades; whereupon the county engineer directed him to supply the grade stakes, which he promptly supplied. About two weeks after claimant had executed the contract he went to the contract site where he met the county engineer and several other engineers employed by the highway department, who proceeded to fix the grades and place the stakes so that he could carry on his work under the contract. In the meantime claimant loaded up his machinery, tools and equipment, consisting of five carloads, and transported them to the site of the contract, where he commenced excavating on or about November 15, 1919. Upon the completion of the preliminary work of the engineers, an inspector in the employ of the highway department was placed on the contract, under the supervision of the county engineer, and there remained until claimant suspended work on or about December 16, 1919. On or about the last date mentioned claimant requested the county engineer to furnish him with an estimate. The county engineer said that he would do this but late in the same day advised claimant by telephone that he would be unable to do so for the reason that the comptroller had not yet approved the contract.

This was the first intimation that the claimant had received that the contract had not been executed on the part of the state of New York. He immediately stopped work, verified in the office of the highway department the information he had received from the county engineer, and thereafter performed no further work under the contract.

Subsequently, and on January 13, 1920, the contract not yet having been approved by the comptroller, claimant notified the commission of highways that he considered the state to have breached its contract, and demanded the return of his deposit together with the amount of money earned and such damages as he had sustained.

On January 28, 1920, claimant received from the commission of highways an estimate designated as " Estimate No. 1 of work done and materials in place up to and including January 28, 1920, of Antonio Colarusso, contractor, under contract dated October 16, 1919." No draft accompanied this estimate.

On March 3, 1920, claimant was notified that the commission of highways had executed the contract; and thereafter, and on March 5, 1920, he was furnished with a copy of the contract executed by the commission of highways and approved by the comptroller as of March 3, 1920. On March 8, 1920, claimant received from the commission of highways a draft in payment of said estimate No. 1, which draft claimant returned.

Under the decision in the case of *Belmar Contracting Co., Inc.*, v. *State of New York*, 233 N. Y. 189, it is clear that no contractual relations existed between the claimant and the state during the progress of the work and up to the time of the repudiation of the contract by the claimant on January 13, 1920; and, therefore, claimant's claim for damages cannot be sustained upon the theory of a breach of contract.

Nevertheless, the *Belmar* case is distinguishable from the case at bar. In the former case the contractor was not deceived in any way, did not repudiate the contract; and, notwithstanding the delay, after the execution of the contract elected to proceed with the work under its terms. In the *Belmar* case the state in the language of the court " has received nothing whereby it is unjustly enriched at the claimant's expense." In the instant case the commission of highways, through its engineers, furnished claimant with the grades and other preliminary engineering data necessary to enable him to prosecute the work in accordance with the contract which he had signed, called upon him to furnish the grade stakes, supervised his work both through the county engineer and through the inspector furnished by the commission, and not only permitted but encouraged him to proceed with the execution of the contract, without advising him of the fact which it well knew, that the contract had not been approved by the comptroller or executed by the commission. By these acts and this omission on the part of the commission, the claimant was deceived no less, nor less injuriously, than he would have been had the commission falsely advised him at the time that the contract had been so approved and so executed. As a result of this deception by the commission of highways, which, though lacking in bad faith as it undoubtedly was, proved no less disastrous to claimant, the state has received the benefit of labor and materials

13

furnished by the claimant at a cost to him of several thousand dollars. Furthermore, the state executed the contract after knowledge that the work had been done and after knowledge that the claimant, acting within his rights, had repudiated the contract which he had theretofore executed. It seems to us that this subsequent execution of the contract by the state amounted to a ratification of claimant's acts and an acceptance of the work done by him.

We are unwilling to subscribe to the contention of the learned attorney-general that the state may retain the benefits of the work done by the claimant, under the circumstances above recited, without reimbursing him therefor. We think the measure of damages approved in *United States* v. *Atlantic Dredging Company,* 253 U. S. 1, is applicable here; and that claimant is entitled to judgment for the actual cost of the work performed by him up to December 16, 1919, which we find to be the sum of $4,524.48. He is entitled, in addition, to judgment for the amount of his deposit, $7,490.58, with interest from October 16, 1919.

ACKERSON, P, J., concurs.

Judgment accordingly.