## SANFORD & BROOKS CO. v. COMMISSIONER OF INTERNAL REVENUE.

Circuit Court of Appeals, Fourth Circuit.
October 15, 1929.

No. 2827.

Northcott, Circuit Judge, dissenting.

Harry N. Baetjer, of Baltimore, Md. (J. Crossan Cooper, Jr., of Baltimore, Md., on the brief), for petitioner.

Andrew D. Sharpe, Sp. Asst. to Attorney General (Mabel Walker Willebrandt, Asst. Atty. Gen., Sewall Key and John Vaughan Groner, Sp. Assts. to Atty. Gen., and C. M. Charest, Gen. Counsel, Bureau of Internal Revenue, and Prew Savoy, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., on the brief), for respondent.

Before WADDILL, PARKER, and NORTHCOTT, Circuit Judges.

PARKER, Circuit Judge. This is a petition by a taxpayer to review a decision of the Board of Tax Appeals. Petitioner, as agent for the Atlantic Dredging Company, was engaged during the years 1913, 1914, and 1915 in dredging a part of the Delaware river under a contract with the United States. It expended in the performance of the contract a total of $176,271.88 in excess of the amounts received thereunder. In December, 1915, it learned that certain vital representations, on the faith of which the contract had been accepted, were untrue, whereupon, it stopped work and, in 1916, instituted suit against the United States in the Court of Claims for the losses under the contract and for the profits which would have been realized on the basis of a contract subsequently entered into. The Court of Claims gave judgment in favor of petitioner, but only for the actual loss which it had suffered; and this judgment was affirmed by the Supreme Court (U. S. v. Atlantic Dredging Co., 253 U. S. 1, 40 S. Ct. 423, 425, 64 L. Ed. 735) on the ground that it was "simply compensatory of the cost of the work, of which the government got the benefit."

Under this judgment there was paid to petitioner in the year 1920 the sum of $192,577.59, which amount represented the $176,271.88 loss with interest on same amounting to $16,305.71. The Commissioner of Revenue held that this entire amount was taxable

as income for the year 1920; and the Board of Tax Appeals sustained this holding. Petitioner concedes that the $16,305.71 representing interest is thus taxable, but contends that the $176,271.88, being mere reimbursement of loss, is not. It appears that in its returns for the years 1913 to 1916 petitioner claimed as losses the excess of expenditures over receipts under the contract and that this served to decrease the income reported during these years. After the collection of the judgment, however, it filed, or proposed to file, amended returns for the years in question, eliminating the losses claimed under the contract, which had been reimbursed under the recovery against the government.

Two questions are presented by the petition: (1) Whether the amount collected under the judgment in reimbursement of the losses sustained under the contract is taxable income within the meaning of the Income Tax Law; and (2), if not, whether petitioner, by reporting the excess of expenditures over receipts under the contract as losses during the years when they occurred, must be held to have made a final election in the matter and to be now estopped thereby from claiming that the recovery should be treated as extinguishment of loss and not as income. We think that both of these questions must be answered in the negative.

On the first question, it should be observed that income, even gross income, within the meaning of the taxing acts, is not synonymous with receipts; for receipts may represent a mere reimbursement of capital expenditure, and certainly it was not the intent of Congress to tax this. See opinion of Commissioner Korner in the appeal of James P. McKenna, 1 B. T. A. 326, 333. There has been much discussion as to what is meant by "income" as that word is used in the income tax laws; but it would seem that the Supreme Court has settled the matter. After full consideration, that court has declared that income within the meaning of these laws may be defined as gain derived from capital, from labor, or from both combined, including profit gained through sale or conversion of capital assets. Eisner v. Macomber, 252 U. S. 189, 207, 40 S. Ct. 189, 64 L. Ed. 521, 9 A. L. R. 1570; Bowers v. Kerbaugh-Empire Co., 271 U. S. 170, 174, 46 S. Ct. 449, 70 L. Ed. 886.

Now the amount collected by the petitioner as reimbursement of loss is certainly not income within this definition. It is not gain derived from capital, from labor, or from any other source. A case directly in point is that of Marshall v. Commissioner, 10 B. T. A. 1140, in which it was held that an amount received under the War Minerals Relief Act (50 USCA § 80 note), as partial reimbursement for losses sustained, did not constitute income. In that case it appeared that the taxpayer in 1918 had erected a plant for carrying out a government contract. With the signing of the Armistice it found itself with a worthless plant on its hands, from which only a small amount was realized as salvage. In 1921 the government reimbursed it for its capital outlay to the extent of $20,048.77. In holding that this was not taxable as income for the year 1921, the Board of Tax Appeals said, "We do not see how the partial reimbursement for losses sustained can be construed to be income," and quoted from Bowers v. Kerbaugh-Empire Co., supra, "The mere diminution of loss is not gain, profit, or income."

It is said, however, that each year must be treated as a unit for income tax purposes, and that for this purpose we must view the expenditures and collections of each year entirely apart from those of other years. It is undoubtedly true that the year is the unit in income taxation and that income received or accrued within a given year must be reported as of that year; but it by no means follows that the events of other years may not be considered along with a particular item of alleged income in determining whether it constitutes taxable income or mere reimbursement of loss. As a matter of fact, the regulations of the Treasury Department in many instances expressly provide for reference to matters occurring in other years as a means of determining the income of a particular year. Thus under article 52 of Regulation 45, issued under the 1918 act (40 Stat. 1057), it is provided:

"In view of the unusual conditions prevailing at the close of the year 1918 it is recognized that many items of gross income, such as claims for compensation under cancelled contracts, together with claims against contracting departments of the Government for amortization and other matters, while properly constituting gross income for the taxable year 1918 were undecided and not sufficiently definite in amount to be reported in the original return for that year. In every such case the taxpayer should attach to his return a full statement of such pending claims and other matters, and when the correct amount of such items is ascertained an amended return for the taxable year 1918 should be filed."

314

We are dealing here with a long-term contract, extending into a number of taxing periods; and from the beginning of the experience of the federal government with income taxation, it has been found necessary to provide either for the return of income after the completion of such a contract or for the amending of returns at that time upon the basis of facts then ascertained. See T. D. 2161; Regulation 33, art. 121; Regulation 45, art. 36; Regulation 69, art. 36; Regulation 74, art. 334. Regulation 33, art. 121, while directed to the application of the Act of Sept. 8, 1916 (39 Stat. 756) was based upon Treasury Decision 2161, which was promulgated February 19, 1915, in construing the act of 1913 (38 Stat. 114). That article provided:

"Art. 121. *Contracting Corporations.*— Corporations engaged in contracting operations and which have numerous uncompleted contracts, which in some cases run for periods of several years, will be allowed to prepare their returns so that the gross income will be arrived at on the basis of completed work— that is, on jobs which have been finally completed—any and all moneys received in payment for completed jobs will be returned as income for the year in which the work was completed. If the gross income is arrived at by this method, the deduction from gross income should be limited to the expenditures made on account of such completed contracts.

. "*Income on Basis of Estimates.*—Or the percentage of profit from the contract may be estimated on the basis of percentage of completion and payments made thereon, in which case the income to be returned each year during the performance of the contract will be computed upon the basis of the expenses incurred on such contract during the year; that is to say, if one-half of the estimated expenses necessary to the full performance of the contract are incurred during one year, one-half of the gross contract price should be returned as income for that year; all under or over statements of income to be adjusted upon completion of the contract and return made accordingly. (T. D. 2161)."

This article was brought forward in substantially the same form in the other regulations referred to above. The last clause of the article, however, was changed in subsequent regulations, evidently for the purpose of clarity, so as to provide:

"Upon the completion of a contract if it is found that as a result of such estimate or apportionment the income of any year or years has been overstated or understated, the taxpayer must file amended returns for such year or years."

The case of the petitioner here falls within the spirit, if not within the letter, of this regulation. Its contract with the government was never completed in a technical sense; but upon the collection of the judgment there was a completion of what was necessary to be done to determine what was to be received for the work done under the contract. Petitioner then, under the regulation quoted, should have filed amended returns for the years for which it appeared that its income had been understated as a result of deducting supposed losses arising during the contract's performance; for the amount received from the government was reimbursement of these losses, not gain or profit or other accretion of wealth.

The case of U. S. v. Anderson, 269 U. S. 422, 46 S. Ct. 131, 70 L. Ed. 347, is cited as sustaining the proposition that each twelve months period must be treated as a unit for the determination of income for tax purposes, "each taxable period standing alone, with items of income and deductions determined according to the events of that year." That case, however, does not support any such proposition. It holds that, where a corporation keeps its books and makes its returns upon the accrual basis, it is not permissible to defer to a subsequent year the deduction of a tax, imposed on business done during the year merely because such tax is assessed and paid during the subsequent year; and the basis of the decision is that the taxpayer, having elected to keep its books and report its income upon the accrual basis, must deal with all matters where practicable, including taxes, upon the same basis. There is nothing in the decision which lends any support to the proposition that reimbursement of loss is to be treated as income because received in a year subsequent to that in which the loss occurred.

Nor do we think that the action of petitioner in claiming the losses under the contract as deductions from income for the years 1913 to 1916 estops it from denying that the recoupment of these losses is income. It is true, of course, that in ordinary cases where credit is taken for a loss, as by charging off a bad debt, its subsequent recoupment will be treated, not as reimbursement of loss, but as receipt of income. See Regulation 69, art. 50. But this rule is based upon the fact that the taxpayer, with knowledge of his rights, deliberately chooses to treat the loss as

absolute and to make settlement of the taxes for the year upon that basis. Having done this, he will not be heard to say thereafter that he received value from what he deliberately elected to have the government treat as worthless. We do not think, however, that this rule has any application in the case of a long-term contract, as to which the regulations expressly provide 'for the filing of amended returns where, upon its completion, it is found that the income of any year or years has been overstated or understated. Petitioner's deduction of losses during the years when the contract was being performed is not analogous to the deduction of a loss resulting from the charging off of a bad debt. Here nothing was charged off. Losses were claimed as a result of expenditures made in the ordinary course of business; but petitioner had no claim under its contract for reimbursement of these expenditures, and no claim on account thereof was charged off or was even set up as an asset on its books, until after the collection of its judgment. Estoppels are not favored in the law; and, in the fact that the excess of expenditures over receipts was claimed as a loss, we see nothing which should be held to estop petitioner from treating reimbursement of this loss in accordance with its true character.

The case of Inland Products Co. v. Blair (C. C. A. 4th) 31 F.(2d) 867, is very much in point. In that case the government had erroneously collected a soft drink tax upon sales of sweet cider, and the amount so collected had subsequently been refunded. The taxpayer had claimed as deductions from his taxable income the amounts paid as tax. This court held that, upon refunding the moneys erroneously collected, the government could reform the tax returns for the years when the taxes were paid and eliminate the deductions claimed on account thereof. The taxpayer strenuously contended that the refund should be treated as income in the year when received, and that we had no right to consider subsequent occurrences as bearing upon matters covered by the returns. We thought, however, that we should regard substance and not form and should treat the refund of the taxes, not as the receipt of income, but as the correction of a mistake. The same principle is applicable here. The recovery of the $176,271.88 was not, it is true, the correction of a mistake; but it was a payment in reimbursement of a loss for which a deduction had been claimed, just as it had been claimed in the case of the taxes erroneously paid.

After all has been said that can be said with regard to the various technical aspects of the case at bar, the fact remains that to sustain the tax on the $176,271.88 recovered as reimbursement for loss is to sustain a tax on income where no income has been in fact received. We do not see how this could be justified either under the Income Tax Law itself or under any legal principle which could be invoked in its interpretation. There can be no doubt that the right and justice of the case require that the $176,271.88 be treated, not as income, but as reimbursement of loss; and we know of no legal principle under which what is so manifestly just and right may be defeated and the government placed in the unseemly position of reimbursing a loss with one hand, and, under the guise of taxation, taking away a part of the reimbursement with the other.

The decision of the Board of Tax Appeals will be reversed, and the case will be remanded with directions that upon petitioner filing amended returns for the years 1913 to 1916, eliminating the deductions claimed on account of the loss which has been reimbursed, the amount received in reimbursement be eliminated from the computation of taxable income for the year 1920. Of course, the item of $16,305.71, received as interest, should be included in the computation of income for that year.

Reversed and remanded.

NORTHCOTT, Circuit Judge (dissenting). The petitioner, as agent for the Atlantic Dredging Company, was engaged in dredging a part of the Delaware river during the years 1913, 1914, 1915, and 1916, under a contract with the United States. It expended, in those years, in doing the work, a total of $176,271.88 in excess of the payments received for the same; the amount of said excess, allocated to those years (1913 to 1916) on the basis of excess of expenditures made over payments received in each year, being as follows:

| | |
|---|---|
| 1913 | $ 28,241 03 |
| 1914 | 68,117 81 |
| 1915 | 69,705 15 |
| 1916 | 10,207 89 |
| Total | $176,271 88 |

In the year 1916, petitioner learned that certain representations which had been made on behalf of the United States, and on the strength of which the contract was accepted, had been misleading, and it discontinued the work and instituted suit in the Court of Claims against the United States to recover the amount of loss sustained by it, in the

performance of the contract as well as damages.

The Court of Claims found that the expenditures made by petitioner in the performance of the contract had amounted to $211,050 more than it had received in payment for the work, which amount the court allowed to the claimants. On appeal to the Supreme Court of the United States, the judgment of the Court of Claims was affirmed, and there was accordingly paid to the taxpayer in 1920 the amount of the judgment rendered in its favor, with interest thereon amounting to $16,305.71, a total recovery of $227,355.80. The Atlantic Dredging Company was entitled to and there was paid to it $34,778.21, making the net amount received by the petitioner $192,577.59.

This appeal is taken from the final order of the United States Board of Tax Appeals, holding that the amount received by the petitioner in the year 1920 was properly included in the petitioner's gross income for that year, for the purpose of taxation.

The statute involved is Revenue Act of 1918, c. 18, 40 Stat. 1057, 1058.

The petitioner contends that instead of being taxed on the amount in controversy in 1920 as a part of its gross income, its returns for the years 1913, 1914, 1915, and 1916 should be reformed in accordance with the recovery had for the losses during those years in the contract in question. Petitioner further contends in view of the fact that there was no profit recovered by it on the contract, the amount recovered in the year 1920, besides from the interest, was not gross income for the purpose of taxation, and petitioner further contends that as it was finally settled in the litigation that the United States was at fault with regard to the contract, it would be an injustice to permit the government to recover taxes on the amount paid by it, when no profit was earned in the transaction.

It must be borne in mind that the government in procuring the dredging in the Delaware river acted in a different capacity from that in which it acted as tax gatherer in the year 1920, and this case must necessarily be considered just as though the dredging contract had been made by the petitioner with a private corporation or an individual.

The sum received in 1920, in satisfaction of a judgment on account of work previously done, although no profit is included, undoubtedly constitutes gross income for the year 1920. The business was carried on in effort to make a profit, and the fact that no profit resulted does not change the character of the money received.

The year is necessarily the unit for the determination of income for tax purposes, each taxable period standing alone; the result determined according to the events of that year. United States v. Anderson, 269 U. S. 422, 46 S. Ct. 131, 70 L. Ed. 347.

This must of necessity be the case. Let it be supposed that the petitioner instead of losing during the four years involved, and recovering in the one year, had lost in one year, and had recovered on doubtful claims in four different years subsequently, certainly upon recovery in each of the four years the government could not be required to go back and reform the tax assessment for the one year in which the loss was incurred, or four different times. To hold this would be to hold that the assessment of taxes by the government would never be completed for any given year, and would bring about a situation that would be chaotic.

"* * * In interpreting the law we are not to assume that a system based upon yearly gains and losses was so contrived as to admit deviations in principle which must always operate to the taxpayer's advantage." De Loss v. Commissioner, 28 F.(2d) 803, 805.

Under the Revenue Act of 1913, under which the original returns by petitioner for years 1913, 1914, 1915, and 1916 were made, the income to be reported was that "received" during the year for which the return was made. Maryland Casualty Co. v. United States, 251 U. S. 342, 40 S. Ct. 155, 64 L. Ed. 297.

Compensation for services rendered or work done must be reported as gross income for the year when received, regardless of the year in which the work was performed. Jackson v. Smietanka (D. C.) 267 F. 932; Edwards v. Keith (C. C. A.) 231 F. 110; Woods v. Lewellyn (C. C. A.) 252 F. 106.

The fact that the losses were made and reported over a period of four years and the recovery had in one year worked to the financial disadvantage of the petitioner is merely an incident. It might have worked to his advantage. In any event, the whole tax collection system of the government cannot be upset or changed to meet the exigencies of a particular case. One rule must be laid down for all, and Congress has seen fit to lay down the rule that the year is the unit, and we can see no reason for disregarding the rule.

It is contended on behalf of the petitioner that the cases of Eisner v. Macomber, 252 U. S. 189, 40 S. Ct. 189, 64 L. Ed. 521, 9 A. L. R. 1570, and Bowers, Collector, v. Ker-

baugh-Empire Co., 271 U. S. 170, 46 S. Ct. 449, 70 L. Ed. 886, support their contention. I do not think so. These decisions are not properly applicable to the facts in this case.