**UNITED STATES** of America for the Use and Benefit of Joseph M. **CARTER,** Trustee of Crick Contractors, Inc., Plaintiff-Appellee,

v.

The **ROSS CORPORATION** and St. Paul Fire and Marine Insurance Company, Defendants-Appellants.

No. 17454.

United States Court of Appeals
Sixth Circuit.

Dec. 1, 1967.

Peter A. Trenchi, Tullahoma, Tenn., and Richard H. Harrison, Manchester, Tenn., for appellants.

Don Wyatt, Fayetteville, Tenn., for appellee.

Before O'SULLIVAN, CELEBREZZE and McCREE, Circuit Judges.

CELEBREZZE, Circuit Judge.

This action was instituted in the United States District Court for the Eastern District of Tennessee by the Trustee in Bankruptcy for the use-plaintiff, Crick Contractors, Inc., hereinafter referred to as Crick, a subcontractor, against the bankrupt's prime contractor, Appellant, The Ross Corporation and the surety, Appellant, St. Paul Fire and Marine Insurance Company, on its payment bond under the Miller Act, 40 U.S.C. § 270a et seq. The jury returned a verdict for the plaintiff and after a remittitur for certain damages that were contrary to the law and the facts of the case the District Court rendered judgment on the verdict. It is from that judgment that this appeal is taken.

The cause of action arose out of a government contract for the construction of protective barricades at the Arnold Engineering Development Center. Crick, the subcontractor, contracted with Appellant Ross Corporation, the prime contractor, to perform the excavation and earth work necessary to build the barricades. Two claims for damages resulting from that work are contested on this appeal: The first claim concerns Change Item 3, a change in the construction specifications that was made after Crick's acceptance of the contract and that allegedly created an added expense for the subcontractor. The second claim for damages is based on extra labor necessitated by an excessive amount of subsurface debris and other material, the presence of which could not have been reasonably foreseen by the subcontractor.

On the first claim, the only issues presented were questions of fact for the jury, and we cannot say that the verdict was against the weight of the evidence presented. The construction contract had a provision permitting changes in the specifications; it also had an adjustment clause permitting claims for any increase in cost to the contractor brought about by the changes in specifications. After notification of Change Item 3, Crick duly made reservation of the right to make an additional claim for extra work performed as a result of the changes in specifications.[1] So the only questions for the jury were whether Change Item 3 in fact caused an increase in the cost of Crick's performance and, if so, what the amount of the added expense was.

Drawings prepared by the Government and upon which Crick based its bid indicated that ground elevation at the time of construction would be 1094, and at the time Crick began construction the ground elevation was in fact 1094.[2]

1. For the first time on appeal, the defendant contended that Crick's claim for an increase in cost resulting from Change Item 3 was not timely made. The adjustment clause of the contract provided: "Any claim of the Contractor for adjustment under this clause must be asserted in writing within 30 days from the date of receipt by the Contractor of the notification of change * * *." Evidence in the record indicates that a set of drawings covering Change Item 3 was delivered to Crick on May 17, 1963. Also Crick was notified of the change by a letter from Ross Corporation dated May 18, 1963. The record does not indicate, however, when the letter was received by Crick. So we cannot determine whether Crick's reservation of a claim for increased cost on June 21, 1963, was within thirty days of *receipt* of the notification of change. In any event, even if the receipt of the drawings could be considered notification, it is unlikely that we would be persuaded that time was so much of the essence that a three day delay in notification would forever bar a legitimate claim for added expenses. The purpose of the thirty day clause is to give the Government an opportunity to examine the supporting evidence while the claim is still fresh; a three day delay would not prejudice the Government's inspection of the claim made by Crick. Roberts v. United States, Great American Insurance Co., 357 F.2d 938, 174 Ct.Cl. 940 (1966).

2. Defendants-Appellants make much of a reservation in the contract stating, "Contours shown on this drawing are not representative of the existing field conditions." It appears that the entire area was in a state of flux. Earth stockpiles were being moved from one area to another as the construction progressed. Crick understood the reservation to mean that, although the drawing did not repre-

The original specifications called for a final ground elevation of 1088. Crick intended to use in the construction of the barricades the six feet of dirt that would have to be graded off. The use of this dirt would have required a minimum amount of equipment and labor, requiring only the grading of the dirt from one area on the site to the position of the barricades with perhaps a minimum amount of handling. Change Item 3, however, raised the final ground elevation to 1094 and, thus deprived Crick of this six feet of dirt. As a result Crick had to haul dirt from a borrow area about one mile from the site at an added cost in time, equipment, and labor. From the conflicting evidence presented the jury determined that an extra 10,100 cubic yards of dirt had to be obtained in this manner because of Change Item 3. It was undisputed that $1.50 per cubic yard was a reasonable cost for obtaining the dirt in this manner and for hauling it to the site area. Therefore, the jury verdict of $15,150. on this claim was completely in line with the evidence.

■ Appellants contend, however, that the District Court's refusal to permit the introduction of the complete text and drawings of Change Item 3 into evidence was reversible error. It is true that the original document is the best evidence of its content and effect, and we think that the exhibit should have been received. But the contents of Change Item 3 were presented to the jury through the testimony of several witnesses and we conclude that whatever error was committed was harmless. F.R.Civ.P. Rule 61.

On the second claim for increased compensation, we are faced with the broad general rule that one who has contracted to perform specific work for a stated price will not be entitled to extra compensation because he encounters difficulties that have not been provided against in the contract. The rule is often stated, although seldom followed; See e. g., United States v. Spearin, 248 U.S. 132, 39 S.Ct. 59, 63 L.Ed. 166 (1918); Kansas Turnpike Authority v. Abramson, 275 F.2d 711 (10th Cir. 1960); for in the hard cases courts are adept at finding some basis in the contract for equitable adjustment. The determinative question in any such case is what did the parties bargain for. In the instant case the contract provided:

> "The contractor further acknowledges that he has satisfied himself as to the character, quality and quantity of surface and subsurface materials or obstacles to be encountered *insofar as this information is reasonably ascertainable from an inspection of the site,* including all exploratory work done by the Government as well as from information presented by the drawings and specifications made a part of this contract. Any failure of the contractor to acquaint himself with the available information will not relieve him from responsibility for estimating properly the difficulty or cost of successfully performing the work."

In another clause the contract also provided:

> "Portions of the existing stockpile on the project site may have to be moved and rehandled by the Contractor in order to prosecute his plan of operations; and all such moving and rehandling shall be done at no additional cost to the Government."

Testimony by Crick's agents indicated that a reasonable amount of rehandling was expected in the type of earthwork involved, but they contended that the amount of rehandling required differed materially from the amount ordinarily encountered and generally recognized as inhering in earthwork of this character. Nevertheless, the contract provisions and the indicated ordinary expectations in the trade would probably, in the usual

---

sent the field conditions at the time of inspection and bidding on the contract, it would reasonably represent the conditions at the time of construction. We find

that this is a reasonable interpretation of the contract since by the contrary interpretation Crick would have no criteria upon which to base his bid.

case, place the risk of such unforeseen added costs upon Crick.[3]

 Courts, however, have interpreted government contracts to mean that a contractor does not bargain for the added costs brought on by subsurface conditions that he could not reasonably discover and that the Government knew, or should have known, about, notwithstanding exculpatory provisions similar to the ones in the instant contract. E. g., United States v. Atlantic Dredging Co., 253 U.S. 1, 40 S.Ct. 423, 64 L.Ed. 735 (1920). In the instant case the contract provided that stockpiles of earth material would be available for formation of the barricades and required the subcontractor to use the stockpiles designated by the Contracting Officer. This provision could be taken as a representation that the stockpiles were reasonably suitable for use in building the barricades. United States v. Johnson, 153 F.2d 846 (9th Cir. 1946). In addition, the District Court found that the excessive amount of debris and foreign material had been deposited within the stockpiles by the Government, or its agents, in clearing an adjacent area following an accident that had occurred some months before Crick's inspection of the site. The Court found that Appellant Ross Corporation, through the Government, knew, or should have known, of the excessive debris at the time of Crick's inspection. The only evidence presented on the matter indicated that the subsurface condition could not be readily ascertained by test borings; so the Court found that Crick's inspection was reasonable and that the failure to notify Crick of the debris deposits amounted to concealment of a material condition on the part of the Government and The Ross Corporation. These findings are supported by the evidence, and given these

facts, Crick was entitled to compensation for the added cost involved in the unanticipated handling and re-handling necessitated by the excessive debris. United States v. Atlantic Dredging Co., 253 U.S. 1, 40 S.Ct. 423 (1920), supra; United States v. Spearin, 248 U.S. 132, 39 S.Ct. 59 (1918), supra; Walla Walla Port District v. Palmberg, 280 F.2d 237 (9th Cir. 1960) (applying Washington law to a similar government contract); Ragonese v. United States, 120 F.Supp. 768, 128 Ct.Cl. 156 (1954).

The judgment of the District Court is affirmed.

dustries Corporation v. United States, 340 F.2d 322, 169 Ct.Cl. 310 (1965); James Julian, Inc. v. President & Com'rs. of Town of Elkton, 341 F.2d 205 (4th Cir. 1956); cf. Hollerback v. United States, 233 U.S. 165, 34 S.Ct. 553, 58 L.Ed. 898 (1914).