R. C. TOLMAN CONSTRUCTION COMPANY, INC., Plaintiff and Appellant,

v.

MYTON WATER ASSOCIATION, Defendant and Respondent.

No. 14555.

Supreme Court of Utah.

April 21, 1977.

---

Elliott Lee Pratt, of Clyde & Pratt, Salt Lake City, for plaintiff and appellant.

Joseph Novak, Salt Lake City, for defendant and respondent.

CROCKETT, Justice:

Plaintiff, R. C. Tolman Construction Company, Inc., sued to recover $113,889.98 for breach of a contract to construct a culinary water system for defendant, Myton Water Association, or in the alternative, for $139,372.98 based on an implied contract for the reasonable value of plaintiff's work. Defendant denied any breach of contract and counterclaimed for $24,400 for plaintiff's failure to complete the work on schedule. Upon a trial to the court it found the issues in favor of defendant and awarded it judgment for $8,400 on its counterclaim.

Plaintiff challenges the trial court's refusal to find: (1) that the plans and specifications failed to inform plaintiff of the local construction conditions; (2) that defendant interfered with plaintiff's work, causing a delay in its performance; and (3) that defendant wrongfully refused to allow plaintiff to suspend winter work.

The defendant's project was to supply water to inhabitants of Myton, North Myton Beach, South Myton Beach, and Pleasant Valley, Utah. It consisted of 65 miles of pipelines and five equalizing reservoirs and pumping facilities. Financing was to be by defendant and a loan and grant from the Farmer's Home Administration. Plans and specifications were drawn up by the consulting engineering firm of Nielsen and Maxwell, who were employed by defendant. They called for a six-month construction period with an additional 90 days to allow for the winter period, if this was necessary. They also split the project into two parts, Schedule A, for all construction north of the Duchesne River and Schedule B, for all construction south of the river. Contractors could bid on either schedule or both.

Before the bidding, Mr. R. C. Tolman, president of plaintiff, inspected the construction area along with other contractors and Mr. R. J. Matthews, then a member of defendant's board of directors. Mr. Matthews showed them the entire project area including the trouble spots. Mr. Tolman went over the project again the next day and further inspected it prior to the bidding date of March 11, 1971.

On the day of the bid opening, plaintiff submitted bids of $360,735 for Schedule A and $245,070.06 for Schedule B. In its proposal, Mr. Tolman acknowledged that he had inspected the location of the project, the plans, specifications and the contract documents and further, that he was familiar with the local conditions of the project area. Plaintiff's was the low bid on each schedule and it was awarded the contract on May 7, 1971. The parties then entered into a written contract under which plaintiff agreed to do the work as specified for $605,805.96. It provided that defendant could increase or decrease any item or items of work by 25%, with the total contract price to be adjusted accordingly. It also committed plaintiff to complete the work on or before February 18, 1972, and if it did not, to pay $200 liquidated damages for each day it went beyond the completion

date. Notice to proceed was issued on May 17, 1971.

Plaintiff began the construction work on June 7, 1971, and immediately ran into difficulties. It complained of underground water and flooding caused by irrigation water from local farms; of encountering in other areas more and harder rocks than had been expected; of having to blast rock in excess of the estimated bid amount; and of running into a type of subsurface ledge rock which required the contract to be amended by two change orders relating to the problem of removing this rock.

The work was substantially completed by April 1, 1972, so the system was operable and capable of supplying culinary water. This was 42 days after the agreed upon completion date. The entire project was not fully completed until July 31, 1972, when defendant issued its certificate of completion. Approximately $19,000 worth of work was deleted in accordance with the 25% deductible clause in the contract, so the final price was set at $585,749.78.

Based on the 42-day delay in the construction's completion, defendant withheld $8,400 as liquidated damages and paid plaintiff the sum of $577,349.78. Plaintiff claimed the total cost of completing the work was $796,035.03, and brought this suit.

■ In analyzing the plaintiff's contentions, it is appropriate to have in mind these basic rules of review on appeal: that we indulge the findings and judgment of the trial court with a presumption of validity and correctness; review the record in the light favorable to them; do not disturb them if they find substantial support in the evidence; and require plaintiff to sustain the burden of showing error.[1]

■ We recognize the validity of the proposition advocated by the plaintiff; that if plans and specifications are so deficient

or defective that a contractor encounters conditions different from those as represented or reasonably to be anticipated, he should be entitled to recover for extra costs incurred in dealing with those different conditions.[2]

The fault plaintiff imputes to the defendant is that it did not make sufficient subsurface investigations and include the results in the plans and specifications. Defendant's effective rejoinder to this is that the specifications spoke for themselves and if there was any such deficiency it was obvious to the plaintiff; and moreover the plaintiff chose to make its own field investigations and knew as much about the subsurface conditions as did the defendant. Upon this dispute the trial court found that:

> The plans and specifications furnished by defendant to plaintiff adequately located, described and covered the nature and extent of the culinary water facilities to be constructed, and the general construction conditions to be encountered and the evidence fails to show that such plans or specifications were inaccurate or deficient in any material respect.

■ Plaintiff's claim that the defendant interfered with and caused delay in the construction work arises because there appears to have been some conflict between the easement granted by Duchesne County to defendant to lay the pipeline and its location according to the specifications. It is true that there is an implied obligation arising out of a construction contract that the person hiring the work to be done will cooperate with the contractor and will not hinder or delay him in his performance.[3]

On this problem, the evidence is also in conflict as to whether the difficulty referred to caused any significant interference with or delay in the work. Its resolu-

1. *Charlton v. Hackett*, 11 Utah 2d 389, 360 P.2d 176; *First Security Bank of Utah, N. A. v. Wright*, Utah, 521 P.2d 563.

2. *U. S. v. Atlantic Dredging Co.*, 253 U.S. 1, 40 S.Ct. 423, 64 L.Ed. 735; *U. S. v. Spearin*, 248 U.S. 132, 39 S.Ct. 59, 63 L.Ed. 166.

3. *Bignold v. King County*, 65 Wash.2d 817, 399 P.2d 611.

tion is found in the observation made above. The evidence was not such as to compel the trial court to make the finding in the plaintiff's favor. Rather, the trial court found:

> . . . the evidence fails to show any material or significant or improper interference by defendant with the work of plaintiff or any unlawful or improper acts or conduct of defendant which delayed the performance of the work by plaintiff.

Comments and reasoning generally similar to what has been said above also apply to plaintiff's claim that the defendant failed in an obligation to make water available to test, flush and chlorinate the pipelines. Under the terms of the contract the duty of performing those requirements and getting the water system in operation was placed upon the plaintiff. The finding of the trial court on that issue was:

> The contract required plaintiff to furnish all water for construction purposes, including water for pressure testing, disinfection, flushing and placing the culinary water facilities into service and the evidence fails to show that defendant failed to furnish any of the facilities required of it under said contract.

Plaintiff's final attack upon the trial court's findings is its failure to find that the defendant unreasonably refused to grant plaintiff permission to suspend work during the winter months, December, 1971, and January and February, 1972. The reasonableness of the refusal was likewise on disputes as to the facts. These included that in December when the request was first made, the plaintiff was already so far behind schedule that it would have had to proceed at twice its previous rate of progress to be able to complete the project by the time agreed; that to suspend work then would risk even more severe weather later in the winter; and that there had not been any weather worse than reasonably should have been contemplated. We regard the issue as concluded by the trial court's finding:

> During the month of December, 1971, plaintiff requested an extension of time

from defendant within which to complete the work required under the contract dated May 7, 1971; that the claims upon which plaintiff based its request resulted solely from . . . [plaintiff's] . . . failure and neglect to perform the work in a reasonable and prudent manner . . . ; that the winter weather conditions in the area of the work were not unusually severe . . . ; and that the evidence fails to show that defendant unlawfully, improperly, or unreasonably refused to grant plaintiff's request for an extension of time within which to complete the work.

There is another matter which has a bearing on the propriety of the trial court's finding on the issue just discussed. Although work to the extent of $19,000 worth had been deleted from the project, the time for its completion was not correspondingly shortened. In that regard the trial court's findings stated:

> . . . that any additional time required for the performance of the minor items of extra work was less than, and was offset by the time allowed for the performance of the deleted items of work; and that the evidence fails to show that there was any impropriety or unreasonableness in defendant requiring plaintiff to complete the work within the time specified by said contract, . . . .

■ There is a reasonable basis in the evidence to justify the trial court's refusal to find in accordance with the plaintiff's contentions. Therefore, consistent with the hereinabove stated rules of review, the judgment is affirmed. Costs to defendant (respondent).

ELLETT, C. J., and MAUGHAN, WILKINS and HALL, JJ., concur.