**Robert H. CLENDENEN, Trustee in Bankruptcy of the Estate of M–K Investment Company, a Utah corporation, Plaintiff and Respondent,**

v.

**WESTERN READY MIX CONCRETE CORPORATION, a Utah corporation, Ronald C. Van-Roosendahl, Carol Van-Roosendahl, Paul W. Nielsen, Beth Nielsen, P.S.B.D. Investment Company, Construction Systems, Inc., Doors, Inc., dba Western Overhead Door Company, United States of America, and Utah State Tax Commission, Defendants and Appellant.**

No. 18822.

Supreme Court of Utah.

Aug. 21, 1984.

Glenn L. Archer, Jr., Michael L. Paup, William S. Estabrook, Kristina E. Harrigan, Washington, D.C., Brent D. Ward, Joseph W. Anderson, Kenneth L. Rothey, Salt Lake City, Paul N. Cotro-Manes, Hershel J. Saperstein, Weston L. Harris, David L. Wilkinson, Atty. Gen., Mark K. Buchi, Gary R. Thorup, Asst. Attys. Gen., for appellant.

Carl E. Kingston, Salt Lake City, for respondent.

CONDER, District Judge:

The Court is confronted with a solitary issue in this case: whether the lien of M–K Investment Company is superior to the lien of the United States of America.

If we trim the facts in this case down to those pertinent to this issue, we find that on or about May 8, 1975, M–K Investment Company (hereinafter referred to as M–K) and Western Ready Mix Concrete Corporation (hereinafter referred to as Western) executed two mortgages and an accounts receivable security agreement for the purpose of securing an accounts receivable financing arrangement between the parties. These mortgages included the following clause: "To secure payment to Mortgagee of any and all indebtedness now or hereafter owing by Western Ready Mix Concrete Corp. to Mortgagee ...." This has been referred to as a "dragnet clause." Said mortgages were properly recorded on May 13, 1975.

On December 14, 1977, the United States of America (hereinafter referred to as USA) recorded two federal tax liens against the said mortgaged real estate, upon which there is a total of $50,352.28 due and owing, plus interest and penalties. After January 28, 1978, and prior to trial, M–K had advanced to Western the sum of $1,977,449.78 and had received back from Western the sum of $2,534,007.98 from receivables acquired by Western after January 28, 1978. Thus there is nothing due and owing on these advances. During oral argument before this Court, it was conceded that the receivables were not in issue.

The trial court determined that the last payment by Western to M–K on the obligation that is in issue in this appeal was made on December 31, 1978. The court determined that the balance due M–K from Western was $613,381.38, plus costs and expenses of sale at the mortgage foreclosure. The court further determined that M–K's mortgage lien is superior to and has priority over USA's federal tax lien. It is this latter point that raises the issue on appeal in this case.

■ Appellant USA has not seen fit to file any transcript of the proceedings in the trial court. Consequently, this Court assumes that the evidence adequately supports the findings of fact and conclusions of law as made by the trial court. *Hanover Ltd. v. Fields*, Utah, 568 P.2d 751 (1977); *R.C. Tolman Construction v. Myton Water Association*, Utah, 563 P.2d 780 (1977).

■ This Court has heretofore recognized the validity and priority of a properly recorded mortgage containing a "dragnet clause." *Bank of Ephraim v. Davis*, Utah, 559 P.2d 538 (1977). The trial court

in this case found that USA had a valid lien against the same property pursuant to 26 U.S.C. § 6321. Congress, however, recognized that a commercial problem existed where advances were required to be made on a security interest that had been validly filed, and so Congress added § 6323(d), giving a 45-day period for making disbursements.[1] During this time, any advancements made will retain their secured position.

In its brief, USA takes the position that "at a time *when no such advances were outstanding,* the United States recorded two federal tax liens against the properties which were the subject of M–K's mortgages." (Emphasis added.) The trial court's findings and conclusions belie this position. The court determined that at the time of trial there was due and owing over $613,381.38 on the mortgage. Finding No. 19 states that since January 28, 1978 (the end of the 45-day window), M–K has advanced to Western the sum of $1,977,449.78. Finding No. 21 states that since that date M–K has received back from Western the sum of $2,534,007.98. It is therefore apparent that Western was obligated to M–K for over $613,381.38 when the 45-day window closed. Thus, the obligation due on the mortgage was "choate" on January 28, 1978.

The burden is clearly upon USA to show that M–K's security interest did not exist prior to January 28, 1978. Since USA has failed to meet this burden, we must affirm the trial court's decision. No costs awarded.

HALL, C.J., and STEWART, HOWE and DURHAM, JJ., concur.

ZIMMERMAN, J., does not participate herein.

---

1. 26 U.S.C. § 6323(d) provides:

   (d) *45–day period for making disbursements.*—Even though notice of lien imposed by section 6321 has been filed, such lien shall not be valid with respect to a security interest which came into existence after tax lien filing by reason of disbursements made before the 46th day after the date of tax lien filing, or (if earlier) before the person making such disbursements had actual notice or knowledge of

tax lien filing, but only if such security interest—

   (1) is in property (A) subject, at the time of tax lien filing, to the lien imposed by section 6321, and (B) covered by the terms of a written agreement entered into before tax lien filing, and

   (2) is protected under local law against a judgment lien arising, as of the time of tax lien filing, out of an unsecured obligation.